```
 1                  UNITED STATES DISTRICT COURT
                       DISTRICT OF MASSACHUSETTS
 2


 3      *  *  *  *  *  *  *  *  *  *  *  *  *  *
        *UNITED STATES OF AMERICA    *
 4                                   *    CRIMINAL ACTION
                      v.             *    No. 13-10242-RGS-3
 5      *                            *
        JULIO RODRIGUEZ              *
 6                                   *
        *  *  *  *  *  *  *  *  *  *  *  *  *  *
 7


 8


 9


10           BEFORE THE HONORABLE RICHARD G. STEARNS
                 UNITED STATES DISTRICT JUDGE
11                       DISPOSITION
                      October 21, 2014
12


13      APPEARANCES:


14           UNITED STATES ATTORNEY'S OFFICE, (By AUSA Michael
        J. Crowley), 1 Courthouse Way, Suite 9200,  Boston,
15      Massachusetts  02210, on behalf of the United States of
        America
16
             LAW OFFICES OF ROBERT L. SHEKETOFF, (By Robert L.
17      Sheketoff, Esq.) One McKinlay Square, Boston,
        Massachusetts  02109, on behalf of the Defendant
18
             ALSO PRESENT: Alan Bowman,  Esq.
19


20


21                                   Courtroom No. 21
                                     1 Courthouse Way
22                                   Boston, Massachusetts 02210


23
                      James P. Gibbons, RPR, RMR
24                       Official Court Reporter
                      1 Courthouse Way, Suite 7205
25                     Boston, Massachusetts  02210
                        jmsgibbons@yahoo.com
```

```
 1                    P R O C E E D I N G S
 2             THE CLERK:  All rise for this Honorable Court.
 3         Court is open.  You may be seated.
 4         The case before this Court carries
 5    Case No. 13-cr-10243, United States of America versus Julio
 6    Rodriguez.
 7             Counsel, please identify yourselves for the record.
 8             MR. CROWLEY:  Good afternoon, your Honor.  Michael
 9    Crowley on behalf of the United States.
10             MR. SHEKETOFF:  Good afternoon, your Honor.  Robert
11    Sheketoff on behalf of Julio Rodriguez, who is seated next
12    to me.
13         Your Honor, also present in the courtroom is Alan
14    Bowman, who is an attorney in New Jersey.  He was the
15    referring lawyer to me, and he worked on this case.  Could
16    he join me at counsel table?
17             THE COURT:  I don't see any reason why not.
18             MR. SHEKETOFF:  Thank you.
19             MR. BOWMAN:  Thank you, your Honor.
20             THE COURT:  All right, I see upon review of the
21    presentence report that no objections have been interposed
22    by the government or the defendant to the probation
23    officer's calculation of the Advisory Guidelines as a range
24    of 84 to 106 months.
25         I know from the plea agreement that the government has
```

1    committed itself to something less than that.

2         So, Mr. Crowley, do you want to go forward with the

3    government's recommendation on the case?

4         MR. CROWLEY:  Your Honor, the government is

5    recommending a sentence of six-and-a-half years, 78 months;

6    60 months of supervised release; and a $200 fine.

7         As the Court is aware, this case involved Mr. Rodriguez

8    and multiple other coconspirators attempting to do an armed

9    robbery, which, unfortunately for them, was a sting

10   operation.

11        But we would note that Mr. Rodriguez was in a car.  He

12   himself was carrying a starter pistol which he was to use in

13   order to threaten the individual inside the building, the

14   victim.  He also had -- was armed with a taser, and mask,

15   and various other things.

16        His two coconspirators in the vehicle were both armed

17   with handguns.  They were also carrying pepper spray.  They

18   were also carrying zip-ties, masks, and a knife.  This was a

19   highly violent crime.  All three individuals in that vehicle

20   -- there were three in the follow-up vehicle -- were going

21   into a business where they thought a person was going to be

22   in there, and they were prepared to tie him up and take

23   whatever steps necessary.

24        Part of the government's analysis in this factors in

25   the fact that Mr. Rodriguez has no extensive criminal

1    record, though he does have some contacts.  That is why we

2    went below the Guideline recommendation, also to take into

3    account some of the issues tied to the fact that it was a

4    sting.  So there was some mitigation of the danger there, as

5    it was a government operation.  But Mr. Rodriguez was more

6    than prepared, along with his two cohorts, to go into a

7    building armed, and that type of crime could result in any

8    number of horrible situations:  Shootings inside the

9    building, shootings coming out of the building, and the fact

10   that at least one of the individuals drove up from New

11   Jersey with a firearm, Mr. Simmons, because he was the one

12   who brought his own gun.

13       This was not an incident that just crept up on these

14   individuals that came up from New Jersey.  They went out to

15   do this robbery.  I know there's been some argument, your

16   Honor, that this was just hatched upon them at -- once they

17   got up to Massachusetts, but we believe that as the Court

18   reviews the facts there's no dispute that Mr. Simmons

19   brought a gun.  So why would Mr. Simmons bring a gun if they

20   weren't prepared to do the robbery?

21       So taking into account the danger presented, we're

22   prepared, and we have recommended, a sentence which is

23   approximately 19 months below the Guideline range, but we

24   think under 3553 that's a necessary sentence of

25   six-and-a-half years for the armed robbery.

1          THE COURT:  Thank you, Mr. Crowley.

2      Mr. Sheketoff.

3          MR. SHEKETOFF:  Thank you, your Honor.

4      So what's in contention between the parties?  I am

5  going to ask you to impose a one-day sentence on the

6  conspiracy count and a five-year mandatory minimum sentence

7  on and after.  So we're 18 months apart in our

8  recommendations here.  That's not a huge number, your Honor,

9  I don't pretend it is, but since it's going to be at least

10  five years and a day, take that as my starting point.

11      My client did not have a real gun.  It's just a

12  mitigating factor.

13      The discussions that precede this sting my client is

14  not mentioned in.  He's a last-minute recruit.  He knows the

15  Senior's children, and he's a last-minute recruit.

16      And I think the presentence report, which is based

17  primarily on the government's statement of the case, has

18  some interesting things in it about the crime itself,

19  including the discussion in the car where my client's

20  present.  That's basically the basis of their information

21  about my client where they talked about being careful not to

22  harm the victim.  And, as I already said, he had the fake

23  gun.

24      So my client at age 16 dropped out of school.  His

25  parents had a divorce.  It was rough on him for -- some

1    people take it differently than others.

2         You know, I asked the family to write letters, and the

3    one common theme in all the letters is how immature he is,

4    and how easily convinced he is, and how sweet he is.

5         And it's not unusual, your Honor, for people to have

6    more than one personality.  So he is a real human being with

7    parents that love him.  They're present in the courtroom,

8    his stepfather and mother.  His half-brother and his wife

9    are present.  They have all come up from New Jersey.  He has

10   a real support network, and he actually has a history of

11   working.  It wasn't full-time employment, but it was real

12   employment that went on for many years.  But he has -- he's

13   immature and has very poor judgment, and he had a serious

14   drug problem that was partially addressed.  He's in a

15   program that was a significant program.

16        But you can see, as the probation officer said, he

17   doesn't think he needs drug treatment, when he obviously

18   does.  He's got -- he's immature.

19        And so the -- to me, your Honor, and I've been doing

20   this for a very long time, as you well know, is there a real

21   difference to anyone in the world between five years and a

22   day and six-and-a-half years other than Julio Rodriguez and

23   his family?  Are there people out there in terms of general

24   deterence who would say, Well, I wouldn't get involved with

25   this because he got six-and-a-half years, but I would get

1    involved with this if he only got five years and a day?   I

2    don't really think so.

3        And this is his real taste of the criminal justice

4    system for real.   He's going to do a significant sentence,

5    and if he doesn't learn the lesson with the

6    five-year-and-one-day sentence, he is not going to learn it

7    with a six-and-a-half-year sentence either, your Honor.

8        And I have some faith, based on the nature of his

9    family relationships, the fact that he is so young when he

10   does this -- by the way, the other thing that struck me is

11   he told the Probation Department when he was interviewed,

12   that he was responsible, he understood that whatever talking

13   was done into his ear, he personally was responsible for the

14   position that he put himself into.

15       So I'm asking for a little bit of mercy because I don't

16   think the real difference between us is significant enough

17   to make an impact on anyone but him, and I'm hopeful that

18   this is the last significant event where he exercises such

19   bad judgment.

20       And, you know, his mother is extremely emotional about

21   this, and it's weighed on my client.   And one of the things

22   that gives me hope about him is that he is so sensitive to

23   the pain that he's caused his mother, that it's real and

24   palpable to him.   And to me that's something that not all my

25   clients show, an ability to appreciate what they've done to

1    their families.

2        So, your Honor, I would ask you to give him a day on

3    Count One and five years on and after on the other count.

4        THE COURT:  The good-time provisions apply to the

5    mandatory five-year sentence; do they not?

6        MR. SHEKETOFF:  They do, your Honor, as I

7    understand it, but, you know, Probation recommended to you

8    that you make him eligible by recommending the 500-Hour

9    Program.  And I would ask you to do that, too, because I

10   think it's in his best interest.  Whether he does it or

11   doesn't do it, obviously, is up to him.  But because it's a

12   quote/unquote crime of violence, he doesn't get to earn a

13   year off of his sentence by getting that program.

14       I have had this in the past, and I had a tampering with

15   a consumer product case, and, as a matter of policy, the

16   Bureau of Prisons lists that as a crime of violence.  Any

17   crime of violence you can take the program, but you can't

18   earn the year off it.  So I would ask you to recommend that

19   program, but realize that he cannot earn a year off of his

20   sentence as a result of that program.

21       THE COURT:  Mr. Rodriguez, would you like to

22   address the Court?  You have the right to, if you should

23   choose.

24       THE DEFENDANT:  Yeah.

25       THE COURT:  Say whatever you want on your own

1    behalf.

2          THE DEFENDANT:  I just want to apologize to the

3    Court and my family, and in the future I will try to make

4    better decisions on what I do.

5         That's it.

6          THE COURT:  I think the word "immature,"

7    Mr. Sheketoff, is well chosen, as I understand from the

8    profile and from what is said about Mr. Rodriguez.

9         The government has recognized that there are some

10   mitigating circumstances in the case, and I think that is

11   well considered on the part of the government.

12        I'm sensitive to the impact that the mandatory sentence

13   will have on Mr. Rodriguez.

14        I think the government's recommendation is a reasonable

15   one.  I am going to reduce it slightly in recognition of any

16   good-time considerations.

17        So the sentence is going to be nine months on the

18   conspiracy count, and then the mandatory five years on the

19   remaining count of conviction.

20        I do think the 500-Hour Substance Abuse Program is

21   appropriate, as would be a recommendation for vocational

22   training while in custody.

23        Mr. Rodriguez, if you would stand, please.

24        Mr. Rodriguez, pursuant to the Sentencing Reform Act of

25   1984 and, more particularly, having considered the

sentencing factors enumerated at 18, United States Code, Section 3553(a), it is the judgment of the Court that you be committed to the custody of the Bureau of Prisons for a term of 69 months.

This term will consist of nine months on Count One and a term of 60 months on Count Two, which, by law, must be served consecutively to Count One.

The Court makes the judicial recommendation that you participate in the 500-Hour Substance Abuse Treatment Program while in the custody of the Bureau of Prisons.

It is a further judicial recommendation that you participate in vocational training to prepare to enter the workforce upon release from custody.

Upon release from custody, you will be placed on supervised release for a term of 60 months.  Again, this will be served concurrently on each count of conviction.

Within 72 hours of release from the custody of the Bureau of Prisons, you must report in person to the district to which you are released, which I assume will be New Jersey.

The Court will not impose a fine, in that you do not have the financial ability to pay a fine.

While on supervised release you will comply with following terms and conditions:  You will, of course, not commit any federal, state, or local crime; nor will you

1    illegally possess a controlled substance.

2         You will refrain from any unlawful use of a controlled

3    substance.

4         You must submit to one drug test by law within 15 days

5    of release from custody and at least two periodic drug tests

6    thereafter, not to exceed 104 tests per year, as directed by

7    the Probation Office.

8         You will submit to the collection of a DNA sample,

9    again as directed by the Probation Office.

10        You will comply with the standard conditions adopted by

11   the court and described at United States Sentencing

12   Guideline Section 5D1.3(c).

13        These will be set forth in writing in the Judgment.

14        You are prohibited from possessing a firearm,

15   destructive device, or other dangerous weapon.

16        You are not to consume alcoholic beverages.  You are to

17   participate in a program for substance abuse, again, subject

18   to the testing conditions I previously outlined.

19        You will also participate in an educational services

20   program and vocational services training program as directed

21   by the Probation Office.  You may be required to contribute

22   to the cost of such programs based on your ability to pay or

23   the availability of a third-party payor.

24        It is finally ordered that you pay to the United States

25   a special assessment of $200.  That, by operation of law, is

1    due immediately.

2        There was a waiver of the right of appeal for any

3    sentence of under 106 six months, which this clearly is, so

4    it will not be necessary for the clerk to instruct on the

5    Notice of Appeal that would otherwise apply.

6        Mr. Rodriguez, I know it has to be difficult,

7    particularly with your mother here, because this is

8    obviously a matter of distress not only to you but

9    particularly to her, because no mother ever wants to see

10    this happen to her child; and I know it's hard to sit and

11    hear yourself described as "immature," but I think that was

12    the right choice of words.  But immaturity is something you

13    grow out of, and, unlike predisposition to do nothing but

14    commit crimes, which I don't think you have, you can grow up

15    and you can learn to make good decisions, as you yourself

16    said.

17        So, behave, do your best, and I think you might be able

18    to put this behind you.

19        But good luck.

20        MR. SHEKETOFF:  Your Honor, could I ask for one

21    other judicial recommendation?

22    I know it's not binding, but his family would like to

23    maintain close contact with him.  If you would recommend an

24    institution in or near New Jersey, I think that might be

25    helpful.

1      THE COURT:  I think that's reasonable, and I think

2  it would be to Mr. Rodriguez's benefit.  That will be part

3  of the Judgment as well.

4      Thank you, counsel.

5      THE CLERK:  All rise.

6  (Proceedings adjourned.)

7

8                    **C E R T I F I C A T E**

9

10     I, James P. Gibbons, Official Court Reporter for the

11  United States District Court for the District of

12  Massachusetts, do hereby certify that the foregoing pages

13  are a true and accurate transcription of my shorthand notes

14  taken in the aforementioned matter to the best of my skill

15  and ability.

16     /s/James P. Gibbons            December 2, 2014
      _____
17     James P. Gibbons

18

19

20
                    JAMES P. GIBBONS, CSR, RPR, RMR
21                      Official Court Reporter
                    1 Courthouse Way, Suite 7205
22                   Boston, Massachusetts 02210
                       jmsgibbons@yahoo.com
23

24

25